UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:22-cr-00010-DCR-MAS-1 |
| v. ) | |
| ) | |
| JE'VON BYRD, ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION AND ORDER**

The Indictment alleges that Defendant Je'Von Byrd ("Byrd") possessed with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), after having been convicted in 2019 for a serious violent felony for which he served more than a year in prison. [DE 1]. The Indictment further alleges that Byrd possessed a firearm as a convicted felon and in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A). [*Id.*]. The United States orally sought detention per 18 U.S.C. §§ 3142(f)(1)(C) and (E). [DE 12]. The Court conducted a detention hearing, where the Government urged detention based on both flight and danger risks. The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA").

Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion and as stated on the hearing record, the Court finds by clear and convincing evidence that available conditions cannot reasonably assure community safety under the circumstances. The BRA thus requires pretrial detention based on danger risk in this case.

1

## I.     BRA FRAMEWORK

Given the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See*

*United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001).  Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context.  18 U.S.C. § 3142(f).  The key is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  Given hearing informality, the Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.[1]

---

[1] The subsection directs the Court to balance the following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

## II.     ANALYSIS

As a threshold matter, the Court finds that Byrd has produced sufficient evidence to rebut the presumption as to both flight and danger. The Court further finds that, though Byrd presents some flight concerns, the United States has not shown that conditions could not reasonably assure Defendant's future appearance. However, as discussed below, the United States has shown by clear and convincing evidence that available conditions cannot reasonably assure the safety of others and of the community. Defendant therefore must remain in pretrial custody.

### A.     **RISK OF FLIGHT OR NONAPPEARANCE**[2]

To meet his initial production burden as to flight, Defendant emphasized that he has appeared for all proceedings in connection with the related state prosecution during his pretrial release term (since October 2021), despite awareness of the impending federal prosecution and the possibility that federal authorities may arrest him at any time. [Hearing Recording at 1:15-5:15]. Agent Isaac Waters ("Agent Waters") indeed testified that Byrd appeared as directed at state proceedings, where the federal arrest ultimately occurred. [*Id.* at 11:00-11:35]. These facts provide some evidence that Defendant would not flee and that he would appear for hearings in this case, overcoming the low presumption bar. In response, the Government must show by a preponderance that no conditions can address any flight risk Byrd presents.

---

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).
[2] The Court uses the terms interchangeably here; any distinction is irrelevant in this case.

The Court first considers the nature and circumstances of the offenses. *See* 18 U.S.C. § 3142(g)(1). The indicted charges—distribution of an aggravated quantity of fentanyl and unlawful possession and use of a firearm—trigger a presumption of nonappearance under the BRA, as noted. Though rebutted, the presumption remains a pro-detention factor in the flight analysis. The charges further entail potentially significant penalties and incarceration terms. The drug charge alone carries a 10-year mandatory minimum imprisonment sentence. 21 U.S.C. § 841(b)(1)(A). Additionally, given the prior qualifying conviction alleged in the Indictment, Defendant may face an enhanced mandatory minimum incarceration penalty of 15 years if convicted. *Id.*; 21 U.S.C. § 851.[3] Defendant further faces additional potential penalties related to the firearm offenses if convicted, including a mandatory 5-year imprisonment sentence consecutive to any other term under § 924(c). These serious penalties may incentivize flight. *See, e.g.*, *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). Accordingly, and although there are no additional circumstances surrounding the instant alleged offenses or Defendant's arrest in this case that would indicate nonappearance risk, the first factor tilts toward flight-based detention.

The Court next considers the weight of the evidence against Byrd. 18 U.S.C. § 3142(g)(2). This factor looks only toward the weight of flight risk evidence, not toward the weight of proof of Defendant's guilt. *See United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010))

---

[3] Though the § 851 notice does not yet appear in the record, it need only be filed at some point before a finding of guilt, leaving the enhanced potential penalties in play; the Indictment alleges the relevant First Step Act predicate facts.

(noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020). Though there is some evidence of nonappearance risk in the record, it is not particularly weighty. The Presentence Investigation Report ("PSR") notes 2016 juvenile charges against Defendant (when he was 15 years old) for tampering with evidence and fleeing or evading police on foot, though no disposition is available. [PSR at 3].[4] The PSR further reflects a single 2018 failure to appear, though it is not clear whether this was in relation to a felony or other case. [*Id.* at 4]. *See United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 WL 5476892, at *11 (D. N.M. Nov. 5, 2012) (finding it "more likely that a defendant would forget about a court date for a traffic violation than for a felony charge"); *cf. United States v. Gibson*, 384 F. Supp. 3d 955, 964 (N.D. Ind. 2019) (finding "multiple failures to appear" aggravating). Given the absence of other flight- or nonappearance-specific risk indicators in the record, this factor thus ultimately weighs against detention based on flight risk.

Finally, the Court considers Byrd's history and characteristics,[5] which are of mixed import in this case. Most aggravating is the fact that Defendant was on active supervision following 2019 convictions for assault, wanton endangerment, and possession of a handgun by a minor at the time of the instant alleged offenses in April 2021. *See* 18 U.S.C. § 3142(g)(3)(B) (considering "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under

---

[4] Defendant's juvenile criminal history is more probative of current risk in this case than in most others given Defendant's young age (21), though his overall record reveals fewer flight than danger concerns, as discussed more fully in the subsequent section.

[5] The fourth BRA factor, the nature and seriousness of any danger risk, is inapplicable in the flight context.

Federal, State, or local law"). This indicates a general lack of commitment to complying with conditions of release and is explicitly pro-detention under the BRA. Byrd's prior charges for fleeing and for tampering with evidence and his previous failure to appear are also aggravating and favor detention based on flight. *See id.* § 3142(g)(3)(A) (considering the defendant's criminal history and record concerning court appearances).

However, several aspects of Defendant's history and characteristics are mitigating. He has lived in the Louisville area for most of his life and, per the record, does not have any current, serious substance use disorder. *Cf. United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (finding that a frequent drug user may present a flight risk). Defendant also proffered that his mother, a nurse residing in Louisville, would welcome him into her home if released.[6] Defendant advised that his mother is typically present at the home at least during evenings and weekends and could monitor him. He also noted that she has been assisting him in seeking employment; as a result, Byrd was confident that he could obtain a position if released. These facts anchor Defendant to Kentucky and to his local community and provide some assurance that he would not flee or fail to appear. *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's family and community ties, length of residence in the community, and employment). Moreover, Defendant's reliable appearance for proceedings during the state bond period from October 2021 through March 2022 (the instant arrest)—despite knowledge that federal authorities were likely to arrest him at some point—strongly weighs in Defendant's favor on the flight front.

---

[6] Defendant's mother travelled to the detention hearing and intended to testify but did not arrive in Lexington in time to do so. The Court nonetheless weighs her support and willingness to testify solidly in Defendant's favor.

*See id.* (considering a defendant's past conduct). For these reasons, the (g)(3) flight factor reflects both pro-release and pro-detention considerations and meaningfully favors neither side.

In any event, despite some legitimate evidence of flight risk on this record as discussed, the Court concludes that it could craft conditions to reasonably ensure Defendant's future appearance in this case. With Defendant's mother's residence proposed as a stable release location, the Court could impose home detention and GPS monitoring, keeping the United States Probation Office ("USPO") consistently apprised of his whereabouts. The Court also would impose travel restriction and employment conditions. Defendant's mother's regular presence at the home would further provide some additional oversight of Byrd and promote compliance. Accordingly, and given the relatively insubstantial evidence of flight or nonappearance risk, the Court is persuaded that the available conditions would reasonably assure that Byrd would not flee and that he would appear as ordered in this case. *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (emphasizing that the BRA "does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight").

The United States thus has not shown by a preponderance of the evidence on this record that no conditions can reasonably assure Defendant's appearance.

**B.**   **RISK OF DANGER**

Though barely, the Court finds that Defendant has rebutted the presumption as it relates to danger based on the proffered evidence of his mother's willingness to let Byrd reside in her home under her supervision during any release term. [Hearing Recording at 1:15-5:15]. The proposed release location provides a stable foundation for additional monitoring conditions, offering at least some probative, credible evidence that the Court could craft conditions to reasonably assure

community safety.  *See Stone*, 608 F.3d at 945; *see also Hernandez*, 2002 WL 1377911, at *2 (requiring "probative, credible evidence to rebut the presumption").

The Government has the responsive burden of demonstrating that Defendant nonetheless presents a danger that cannot be addressed with conditions.  As the BRA danger factors all weigh in favor of detention, and because the Court finds that conditions would not effectively address the danger risks in this case, the United States has shown by clear and convincing evidence that danger-based detention is required.

      1.      <u>**Nature and Circumstances of the Offense**</u>

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance, [or] firearm[.]"  18 U.S.C. § 3142(g)(1).  The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of the at-issue offenses, and the corresponding detention presumption "does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'"  *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)).  As with flight, the nature of the alleged offenses—trafficking in 400 grams or more of fentanyl and related possession and use of a firearm by a convicted felon—weighs strongly in favor of detention in this case.

Unlike flight, however, the circumstances surrounding the alleged offenses and Defendant's arrest in this case do indicate heightened danger risk.  Agent Waters testified that in April 2021 Byrd was apprehended in the parking lot of an apartment complex by Lexington authorities that were anticipating and awaiting a resupply of narcotics.  [Hearing Recording at 6:40-7:50].  On Byrd's person, arresting officers located 936.6 grams of pure fentanyl (by lab

weight), 24 grams of marijuana, $3,715 in cash (including 37 $100 bills), and a loaded handgun. Additionally, a search of the vehicle in which Byrd was a passenger at the time revealed two additional bulk packages of fentanyl (one containing over three kilograms and the other containing 702 grams) located inside of a backpack. [*Id.* at 8:00]. Further, a search of the target apartment within the complex, conducted pursuant to a state warrant, uncovered additional narcotics (including fentanyl) and firearms; inside one bedroom, officers located an identification card and mail matter in Defendant's name, suggesting that he resides at or at least has some substantial connection to the residence.[7]  [*Id.* at 8:20-10:00].

All of these facts suggest Byrd's involvement in a sophisticated, high-volume narcotics trafficking operation and indicate significant danger risk. *See United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme"). That Defendant also had a loaded handgun in his pocket at the time of his arrest, in proximity to the narcotics and in the situational context of an alleged bulk resupply, signals added danger. *See United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation" would only increase it). For these reasons, the first factor weighs firmly in favor of detention based on danger.

   **2.      Weight of the Dangerousness Evidence**

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of [the] defendant's guilt." *Stone*, 608 F.3d at 948. The Court makes no "pretrial

---

[7] The addresses on the card and on the mail items are unknown.

determination of guilt[.]" *Id.* (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991)). The central danger is the risk that Defendant would engage in drug trafficking on release. *See United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) (emphasizing that "the danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community"). Given the alleged offense circumstances discussed, Defendant's overlapping criminal history, and—most critically—Defendant's continued attempts to engage in narcotics trafficking while detained in this case, the second factor also heavily favors detention based on danger.

Though the dispositions are unknown due to Defendant's juvenile status at the time, Byrd has been charged within the last ten years with fourth-degree assault (domestic violence) on two occasions, as well as with first-degree burglary, tampering with evidence, and fleeing police. [PSR at 3]. In 2019, Byrd was convicted of second-degree assault, first-degree wanton endangerment, and possession of a handgun by a minor (as Byrd was 17 at the time of the offense). [*Id.* at 4]. Despite Defendant's juvenile status, this offense history is germane to current danger risk given its recency. Notably, the common thread of violence and weapons possession overlaps with the current offense narrative and underscores Byrd's deep entrenchment in criminal conduct.[8]

Most aggravating in the danger context, however, are Defendant's phone calls from the Fayette County Detention Center ("FCDC"). Agent Waters testified that recorded phone calls from FCDC, made from the intake area at the jail and from another inmate's account in the period between Defendant's initial appearance in this case and the detention hearing, capture Byrd

---

[8] Though the offenses in Byrd's criminal history are serious and violent under the BRA rubric, the Court makes no prediction as to their "serious violent felony" qualification for § 851 purposes.

continuing to arrange narcotics sales from the facility.[9] [Hearing Recording at 12:00-14:00]. Defendant was heard referencing drug weights and types as well as prices in multiple discussions with an unknown individual, and he indicated that he has cash hidden somewhere; per Agent Waters, the unknown individual then relayed Defendant's messages to others outside of the facility. Agent Waters testified that, based on his training and experience, these phone calls represented continued drug activity. This conduct indicates a staunch commitment to engaging in narcotics trafficking, even from a secure detention facility, and further confirms Defendant's ability to effectively participate in the scheme remotely. It thus prompts serious doubt that any potential conditions could reasonably assure cessation of Byrd's drug distribution activity.

Accordingly, the overarching (g)(2) factor firmly favors Byrd's pretrial detention.

3.      **History and Characteristics**

The third BRA factor considers the history and characteristics of the person, *see* 18 U.S.C. § 3142(g)(3), as largely already surveyed in the Court's flight discussion and in the preceding (g)(2) analysis. Defendant's criminal history, inclusive of repeat violence and weapons possession, is seriously aggravating in terms of his danger risk. And the fact that he was on post-conviction supervision for violent and dangerous state offenses (including assault and possession of a handgun) at the time he allegedly committed the instant federal offenses is particularly concerning. *See* 18 U.S.C. § 3142(g)(3)(B). Defendant's apparent continuation of trafficking activity at FCDC further increases the danger he poses. These considerations collectively illustrate Byrd's substantial dangerousness.

---

[9] Defendant credibly explained that his use of another inmate's account stemmed from convenience rather than an effort to avoid detection.

Nor do the mitigating aspects of Defendant's history and characteristics—namely his family support, possible employment prospects, and lack of serious substance use disorder issues—meaningfully mute the risk that Defendant would continue trafficking if conditionally released. Rather, the demonstrated pattern of offenses indicates that Byrd is deeply and dangerously invested in criminal activity and not dissuaded by legal or other consequences. The third BRA factor thus favors detention based on his established risk of danger to the community.

### 4. Nature and Seriousness of the Danger Risk

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). As discussed, the danger risk in this case is serious, as drug trafficking (particularly in these quantities of fentanyl) broadly harms society. Additionally, the violence in Byrd's background and his history of unlawful weapons possession increases the risk of danger or injury surrounding any continued drug trafficking conduct. *See, e.g., United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community). Accordingly, this final factor also weighs in favor of Byrd's continued detention.

### 5. Availability of Conditions Addressing Danger Risk

For the reasons discussed, the Court finds that Defendant presents substantial risk of continued narcotics trafficking if released and, accordingly, is seriously dangerous. Nor can possible conditions adequately assuage the applicable concerns. Defendant has shown that he is able to participate in the alleged large-scale narcotics trafficking scheme remotely, *from jail*, vitiating the potential effectiveness of even the strictest home detention and locational monitoring conditions. *See United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I.

13

Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged drug distribution scheme from his home). Though the Court concludes that such conditions can reasonably assure Defendant's appearance at hearings in the case, they do not provide equivalent reasonable assurance on the danger front under the circumstances.

The Court thus finds that the Government has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or of the community. Detention based on danger risk is therefore required.

### III. CONCLUSION

Ultimately, the Court finds that the United States has not proved by a preponderance of the evidence that no conditions could ensure Byrd's appearance. However, the Court does find that the Government has shown by clear and convincing evidence that no condition combination could reasonably assure community safety. Accordingly, the Court **GRANTS** the United States' oral detention motion, as stated and detailed on the record at the conclusion of the detention hearing. As the BRA mandates in this case, Byrd shall remain in custody pending trial.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 29th day of March, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge